First case on the calendar is Owens et al. v. Halk Bank, and we have Mr. Weigel. Weigel, Your Honor. Weigel. I see you reserve two minutes for rebuttal whenever you're ready, Mr. Weigel. Thank you, Your Honor. May it please the Court, my name is Robert Weigel. I represent 876 terror victims, each of whom possesses a valid, binding, and unappealable U.S. federal judgment against Iran. This is a judgment enforcement action pursuant to this Court's inherent powers to enforce its judgments under the learning of the Supreme Court in Peacock and this Court's decision in Epperson. I understand you're trying to enforce the judgment, but there is a fraudulent conveyance claim, so when this is litigated, it would be more than just trying to enforce the judgment, right? You're going to have to prove fraud in connection with the bank, right? In Turkey. No. That's in Turkey, right? Or am I missing something? Your Honor, a fraudulent conveyance case is, in fact, part of the Court's enforcement judgment. That distinction was made by Epperson. I understand that case law, but I'm saying as a practical matter, in terms of what you're going to have to prove, I mean, you even characterized it that way in your brief, that you're going to prove that there was fraud in connection, this was done with the intent to evade sanctions, right? Isn't that part of what would be proven? Part of that is, yes, we are submitting two claims, 10273A of the New York Debtor Credit Law, which says that if you make a transfer during the pendency of a lawsuit, and all these transfers you were complaining about were made during the pendency of the lawsuits that my clients have, that if you make a transfer during the pendency of a lawsuit and it's for less than fair consideration... Where did those transfers take place? The transfers took place as part of a scheme resulting... My question is, where did they take place? They took place, Your Honor, there was a transfer from Iran to Halk Bank in Turkey. Part of the scheme for which Halk Bank's head of international banking has already been convicted was to launder those monies in violation of U.S. sanctions through the United States and commit bank fraud in the United States as part of that scheme. So it's all one scheme, and as this court in Orvie Kinderhill said, when you're looking at a fraudulent conveyance, you look at the whole thing. So the documents, the witnesses, where are they located? Did the transfers take place from Iran to Turkey? Is that where the documents and witnesses would be? No, Your Honor, actually that's not. The main witness, a guy named... Goodness gracious, I've forgotten his name. Zarab, was arrested in the United States. He's under U.S. government detention. He testified as a cooperating witness about this scheme in the United States in the Southern District in a criminal action in which this court has affirmed the conviction on the grounds that there was adequate evidence presented to the court below to support the jury verdict. And therefore, there was, as this court said, in affirming the jury verdict on a criminal standard of proof that there was hundreds of documents were introduced in the Southern District in evidence to support the finding that Halk Bank engaged in the very scheme that we're asking this court that we will ultimately be able to prove. And we feel that we'll probably be able to rely on that conviction because Halk Bank actually paid for the defense of Mr. Attila, who was the head of its international bank. But this case has been tried in New York already. So as to the question of where those documents are, they're here. There's no indication that the U.S. Attorney's Office is going to hand over their file to civil litigants. There's no, right? What's the basis for concluding that whatever documents exist in the prosecutor's files are going to be just turned over? You're still going to have to go through Turkey for the documents, right? I would disagree, Your Honor, only because they were put on the public record as part of a criminal trial. Right, the trial exhibits. But obviously there's more than just the trial exhibits, right? But those trial exhibits were sufficient to convict Halk Bank on a criminal – or Halk Bank's head of international banking on a criminal standard of proof beyond a reasonable doubt. So there might be additional documents. Were the exhibits translated into English, by the way? Sorry? Were the exhibits translated into English in the case? I believe they were. My understanding is to put an exhibit into evidence, you would need to translate it. The witnesses were testifying in Turkish, translated into English.  If I may take a step back. What error of law did the district court make or failure to follow the proper legal standard? I didn't really see anything that you could point to where you said the district court applied the wrong standard or something like that. It seems to me that you are just disputing the balancing of all the factors, which is classic abuse of discretion type issue, right? Well, what this court held in the Norax case was the failure to apply the comparative analysis of convenience versus forum shopping, which Judge LaValle wrote about in the Irigori case, that that was an error of law. And our assertion here is that what the district court did is she mechanically counted noses and determined that because there were more foreign plaintiffs than domestic plaintiffs. Well, I don't think that's a fair characterization. First of all, isn't it legitimate on the sliding scale analysis, isn't it legitimate for a court to consider whether the overwhelming majority of plaintiffs are foreign residents? Maybe it's not the only consideration, but isn't that? They cite, I think, four summary orders where we have affirmed district court to consider that fact. Doesn't that make sense that you would consider if there's one U.S. citizen but 100 foreign citizens, why shouldn't a court consider that? No, Your Honor. I shouldn't consider that. So if you have a case where there's 100 foreign residents and one U.S. citizen, the court has to give the same deference to the choice of forum if there were 100 U.S. citizens? Both the 11th Circuit in the Otto Candies case, the 9th Circuit in the Carajinio case, and the D.C. Circuit in the Simon case, which was reversed on other grounds or remanded on other grounds by the second. Does that make sense? Yes. Why does that make sense if there's one U.S. resident and 100 foreign residents, that we would give the same degree of deference to the choice of forum as if there were 100 U.S. residents? Why would we do that? Because, Your Honor— It's a proxy for whether or not it's convenient. Right. It's not a perfect proxy, but again, it's among the factors. And why wouldn't that be something you would say, well, if there's 100 foreign residents, there's a good chance this is probably not the most convenient forum? Well, first off, Your Honor, we have judgments here. There is no case that they've cited or that we have found where somebody who has actually litigated the case to conclusion, got a U.S. judgment, was ever sent abroad under a foreign nonconvenience guidance. So you want us to create a special rule for judgments, that when it's a judgment enforcement action, even if it includes fraudulent conveyance, that there should be more deference to the plaintiffs than in some other case? I'm saying, first off, that the 200 U.S. plaintiffs are entitled to deference, and that that deference is not diminished because they chose—we brought this action. There were 13 separate lawsuits that generated the judgments, that each of my 876 plaintiffs has their own judgment. We could have brought 13 different lawsuits. We could have brought 800 different lawsuits. We're talking about— I had a problem with the allocation of burden of proof with respect to the adequacy of the Turkish forum. That in Abdullah against FISA, the court ruled that the plaintiff—while the plaintiff bears the initial burden of producing evidence of corruption delay or lack of due process in the foreign forum, after the plaintiff has discharged that, which I think is a good argument, was done here, the defendant bears the ultimate burden of persuasion as to the adequacy of the foreign forum. And in this case, the district court imposed the burden on the plaintiffs on that and did not shift the burden, despite the plaintiffs making a prima facie showing, very substantially making such a showing. Do you want to address that? Yes, Your Honor. I think the district court actually flipped the burden on a couple of the different factors, including Turkey as a viable forum. This was—the district court noted that there were serious assertions that Turkey had a specific issue. We're not trying to indict the entire Turkish legal system, but with regard to this case, that there were specific issues about it. It was a political football. And this is a bank owned by Turkey? This is a bank owned by Turkey. They were so incensed by the criminal conviction in the U.S. that they actually opened a criminal investigation into Preet Bharara and June Kim, because they had the audacity to bring a criminal action in the United States against Hulk Bank. And the government just sought to intervene for the benefit of the bank in investigations of the bank? Absolutely. But that has nothing to do with the courts. What evidence is there that the Turkish civil courts would lack sufficient independence to review this under Turkish law? Well, it is their burden, and there is no evidence in the record that suggests that the civil process is not going to be influenced in the same way as the criminal process. Why should we presume that? Shouldn't there be some evidence that the courts are not functioning independently before we decide that we can't send a case to a foreign country? Shouldn't there be some evidence that the courts in the past lacked independence? I think the district court, as Judge LaValle said, the district court flipped the burden. And going back for just to a minute.  Yes, please. And that is, as I understand it, the Supreme Court granted cert last week in United States versus Turkey, Hulk, Bank Bank, Casey? Yes, Your Honor. Will that decision have any impact on these cases today? Yes and no. The decision, obviously, if there is a criminal trial, another criminal trial, because there's already been one criminal trial in this district, the idea that it is convenient to try one case in Turkey and one case here doesn't make a lot of sense. But technically what the court accepted cert on, as I understand it, is whether under the FSIA, Hulk, Bank can be prosecuted criminally here. I was on that panel. Well, you would know better than I. We didn't make a determination what's the more convenient form. We just decided whether or not there was jurisdiction based upon activity in the United States. There was no convenience analysis. No, I didn't mean to imply that. I'm sorry. What I was saying is that just as a purely practical matter, if this case, whether Hulk, Bank accepted money from Iran and laundered it through New York is being tried in the southern district in one trial, that it doesn't make a lot of sense to say that those same facts should be tried separately in another case in Turkey. I know what the Supreme Court reverses. But there is only one trial in the southern district of these very facts. Okay. All right. Thank you. You have reserved two minutes. Thank you. And we'll now hear from Mr. Williams. Good morning, Judge Bianco and the other members of the panel. John Williams representing Turkey A, Hulk, Bank Kazi. May it please the court. I'd actually like to begin with some of the questions that were being directed to Mr. Weigel. I'd like to begin with directing this court to the scope of what this case will be about as opposed to what the criminal case was about. And there's actually an important clue in the complaint. If you look at page JA406 and allegation paragraph 140, you will see that plaintiffs describe in detail two transfers totaling $139,000. Why, you may ask. Well, the reason is, is that those are the only two transfers, the only two transactions that were discussed in any detail in the criminal case. And so if you look at pages 517 and 519 of the JA, you'll see diagrams describing how those transactions worked in the eyes of the government's chief cooperating witness. Those show incredibly complicated transfers both within Hulk Bank and then out of Hulk Bank into other banks in Turkey, then to Dubai, and then around the world. All of that, all of that evidence went to establishing only two transactions worth a total of $139,000. And what this district court was confronted with was instead a case about either $1 billion or $20 billion in transfers, and a case in which every single one of those transfers would become an issue in dispute and the grounds for plaintiff's claims. Because as Judge Bianco mentioned earlier, we are now going to be litigating fraudulent transfer claims. That means that the heart of this case is going to be whether or not there was fair equivalency in the words of New York law, reasonably equivalent value in the words of federal bankruptcy law regarding those transfers. The judge and the jury would have to hear about the amount that went into a customer account, the amount that went out of a customer account, the fees that were charged, whether or not those fees were reasonable. That requires information based on documents written in Turkish, is about transactions conducted in Turkish lira. It has to do with the actions of the Hulk Bank. What about the suggestion that many of these documents were submitted into evidence in the criminal case here? That is incorrect, Your Honor. The criminal case was ultimately about whether or not Hulk, in this case a Hulk Bank executive, intended for U.S. banks to unwittingly engage in transactions with Iran. So the details of bank balances was not an issue in the criminal case. To be clear, we don't know all the documents that the government possesses. What we know is that they never served a grand jury subpoena on Hulk Bank. So we have no reason to think that the government even has possession of the bank balances, the details about the fees charged, or anything like that. There's no reason to think that those are even documents in the government's possession. Can I ask you a question about the affordance of the minimal deference to the choice of forum? They, as you heard today in their briefs, argue that simply because there's many foreign plaintiffs, there are obviously a number of U.S. citizens involved in this case. And the summary orders that you cite are ones where the residences were of the forum, the alternative forum. Egypt was one of them. Whereas here, obviously, no one's a resident of Turkey. So is that a distinguishing feature? And in that situation where there's, and you can correct me if I'm wrong, I think there's no evidence of a foreign forum shopping intent. The district court didn't find, and that's not necessarily dispositive. Certainly on the sliding scale, when there's no evidence of that, typically the choice of forum is given more deference. So why isn't it significant, the fact that none of these plaintiffs are from Turkey? Well, first, Your Honor. It's a long question. No, and please, if I don't answer any part of it, please let me know because I want to answer each part of it. So first, what I'd like to begin with is the fact that it was not until their reply brief that plaintiffs even tried to discuss the four summary orders of this court that we have brought to bear. And so the district court was never confronted with the argument that you are making. District courts are endowed with discretion. I don't think we expect them to have powers of divination. Beyond that, and significantly, time and time again in this court's decisions, it refers only to foreign resident plaintiffs without specific regard to whether or not it is the same country that is being, that is the alternate forum, that is the country of their residence. And that is with good reason because if the ultimate purpose of the sliding scale analysis is to focus on the convenience of litigation in this jurisdiction, then certainly it matters that what matters most is that they are foreign, not that they are residents of the alternative forum. I'd point out two additional facts here that I think are relevant and that the district court was well aware of. Plaintiffs tell this court, both in their opening and in their reply, that they will not need to be active litigants in this case. That's at their brief on pages 22 to 23 and in their reply at page 5. So in terms of what drives the convenience analysis here, it's really the underlying locus of events, the underlying location of documents and witnesses. Those are relevant factors on the sliding scale and the district court considered them. The argument they make regarding additional deference, they want to attribute it, I think, generally to enforcement of judgments. But mine is more specific. Why shouldn't there be additional deference when you're dealing with terrorism victims who Congress, through the Terrorism Risk Insurance Act, has made clear is trying to provide a forum for them to recover damages, and in this case, then to enforce the judgment. Why shouldn't that, I don't think the district court considered that possible additional deference and should it? Well, this is one thing that may not be as captured as well in the briefing as it was in the eyes of the district court. Their claim under the TRIA is really a, candidly, it is a throwaway claim. And they know that. And they know that because they themselves plead that there are no Iranian assets in the United States in Hawk Bank's possession. And that's the only thing that the TRIA attaches to. So in their opposition to the motion to dismiss, they only address the TRIA in a footnote. That's because they know that there's no real there there. But even on the other claims, the backdrop of the other claims is that you have terrorism victims who are seeking to enforce a judgment related to terrorist acts. So why isn't that also something that should be given additional weight in light of statutes that Congress has passed and policies related to that? This court has acknowledged that the availability of statutory relief is relevant. When there's an actual statute providing relief. Here, there is no statutory claim. So we're looking at essentially, you know, the emanations of a policy. Yes, but hasn't the, I mean, in the act that Judge Bianco referred to, didn't Congress express a bias, a preference in favor of the exercise of jurisdiction, in favor of enabling the persons who are victims of terrorist acts to be able to recover on their judgments? Congress struck a very deliberate balance in that statute, Your Honor. It only allowed for the recovery of assets blocked in the United States. Here, there are no assets blocked in the United States. And similarly, they only, so that's the only availability for a claim under federal statutory law against somebody other than the sponsor of terrorism. Hawk Bank is not a sponsor of terrorism. Neither is Turkey. And so Congress therefore reached a deliberate policy choice. It provided for the ability of victims of terrorism and family members of U.S. government employees to sue the state sponsor of terrorism. They created a private right of action providing for that. But they did not create additional claims that could be brought against other parties. And with good reason and with care. Because those kinds of claims, those kinds of issues, raise very delicate and concerning questions of foreign policy. Iran, consistent with U.S. government policy, is allowed to do business with countries around the world. Not just Turkey. Not just Korea. India. Japan. Important U.S. allies rely in part on Iranian oil and gas. Let me just, your time is running out. I'd like you to address Judge LaValle's concern regarding whether or not the district court shifted the burden as related to the experts and the adequacy of the alternative forum. Can you please address that? Absolutely. Thank you, Judge Bianco, because I wanted to address that. There is evidence in the record submitted by our experts that goes to the independence of the Turkish courts. If you look at JA 595 to 98. There's also evidence in the record pointing in the opposite direction from a State Department report. Yes. And the question. The fact that you may have evidence in the record that tends to support independence of the courts doesn't obviate the fact that the district court put the burden on the wrong party. We don't. The fact that there's some evidence that conceivably could support a ruling in your favor, but the court put the burden on the wrong party and never made the ruling that the law requires it to make. There's no reason within the district court's opinion to believe that it was ultimately putting the burden on the wrong party, Your Honor. What we submit is that what the district court correctly understood, consistent with this court's decision in Energy and this court's prior decision in Blanco, is that when the theory of inadequacy is corruption in the other state, that the showing that is necessary to meet that burden is not particularly high for important reasons of comedy. The district court found that we had met that standard. There's good reason to believe that we met that standard, especially given that there is record evidence of the independence of the Turkish courts. There's record evidence regarding how the Turkish government opened an investigation. That was five years ago at this point, four years ago at the time of the district court's decision. Furthermore, and importantly, that investigation was not timed to any action against the bank. That report is from November of 2017, and it followed the U.S. Attorney's Office's decision to indict the equivalent of the Turkish Secretary of the Treasury. It had nothing to do with the indictment against the bank. What about the State Department's report of improper influence by the executive branch over the judiciary in Turkey in criminal matters and matters affecting human rights? This is not one of those cases, Your Honor. And the district court had before it a complaint from these plaintiffs that doesn't criticize the Turkish government in even one paragraph or sentence. So the district court, endowed with its discretion and considering all of the evidence before it, exercised its judgment to determine that although it is a low bar, we amply met it in establishing that Turkey provided an adequate and alternative forum. So the district court affirmatively found that through your experts you had proved the adequacy of the forum, not that there was some lack of, your argument is that there wasn't a failure on their part in terms of a burden of them. Correct. The opposite. I don't think that's correct. I think the district court found that the plaintiff had failed to prove the inadequacy. That's not the way we read the district court's opinion, Your Honor. On page 30 of the district court opinion, the district court, after going through your experts' evidence, says this showing by Halk Bank is sufficient to permit a finding that Turkey is an adequate alternative forum. So that was a finding that your proof regarding the experts was better than their proof, right? Exactly. Saying it's sufficient to permit a finding is different from saying that the court finds the adequacy. Your Honor. There is sufficient evidence to prove a finding. That's just saying that there isn't insufficient evidence. It's not a finding which places the burden on the defendant to prove the adequacy. This burden shifting analysis I don't believe was presented to the district court at the time of the motion to dismiss briefing. But there's no reason to infer that the district court was not aware of it. We established through record evidence and through consideration of not only our experts' submissions, but also the full factual record which includes that Halk Bank, which is a state-owned bank, has paid every judgment that was entered in a Turkish court against it. The district court also saw record evidence of numerous decisions of the Turkish courts finding actions by the Turkish government to be unconstitutional and illegal. That's at JA 598. So the district court had ample evidence in front of it that Turkey could provide an adequate alternative form for this case, especially given plaintiff's own submissions both to this court and to the district court, that they do not need to be active participants in this litigation. Thank you, Mr. Williams. Thank you, Your Honors. Mr. Weigel, you have two minutes for rebuttal. Thank you, Your Honor. Very quickly, Judge LaValle, you're absolutely right. The district court's opinion states, plaintiff's allegations regarding Turkish law enforcement are therefore not sufficient to demonstrate that the Turkish civil court system is an inadequate form for plaintiff's claim. What about the beginning of that paragraph? The beginning of the paragraph says, Halk Bank and its experts have persuasively demonstrated several means by which claims may recover under Turkish law. Yes, but I think that Judge LaValle is right that the district court flipped the burden here. How about the page before when the first line of the whole section is, to secure dismissal of an action on grounds of forum nonconvenience, a movement must demonstrate the availability of an adequate alternative forum. Isn't that clearly saying the movement has the burden? Yes, but she does not find specifically that Turkey is an adequate forum, I believe. I had a few other points, Your Honor, if I might. First off, 1608, 28 U.S.C. 1605A is a congressional mandate that allows these plaintiffs, some of which who are foreign, to come into the United States to get recourse. These are foreigners, as they're described, are all individuals who were injured in their service to the United States. They were either their relatives of those who were killed or the individuals. They were employees of the U.S. Embassy, and Congress has decided to give them a right to sue in the United States, and it would be cruel to say that their judgments cannot be enforced alongside a judgment of an American plaintiff. I would strongly suggest to you that the idea of the residence of the plaintiff as a proxy for convenience does not make any sense after the parties have already litigated the case to conclusion and won a judgment that is entitled to be enforced. Somehow it often gets lost in this analysis that we're not saying that foreign plaintiffs don't get the same shake in a U.S. court. It's only a proxy for convenience, and when the case has been litigated to conclusion, that proxy doesn't work because they have the same judgment as my other plaintiffs, and they're all entitled to get that enforced. And we are seeking Iran's assets in the hands of Hulk Bank. The fraudulent conveyance argument is that Hulk Bank possesses Iran's assets. That's why in this court is held and this Supreme Court is held in Peacock, you can bring a fraudulent conveyance action as part of the court's enforcement jurisdiction. It's part of the same case. They have Iran's assets. I think we understand that argument. Mr. Weigel, thank you to both sides. We're going to reserve decision. Have a good day. Thank you.